**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| LANCE BROWN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | 1:12-CV-1122-DAE |
| | § | |
| SHAWN WILSON, SHERIFF | § | |
| JAMES WILSON, WILLIAMSON | § | |
| COUNTY SHERIFF'S DEPARTMENT, | § | |
| AND WILLIAMSON COUNTY, | § | |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE DAVID EZRA
      UNITED STATES DISTRICT JUDGE

Before the undersigned are Defendant Shawn Wilson's Motion for Summary Judgment, filed January 31, 2015 (Clerk's Dkt. No. 54); Plaintiff's Response to Defendant's Motion for Summary Judgment, filed March 2, 2015 (Clerk's Dkt. No. 57); and Defendant's Reply to Plaintiff's Response to Motion for Summary Judgment of Defendant Wilson, filed March 9, 2015 (Clerk's Dkt. No. 58). The motion was referred to the Magistrate Judge for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b)(1)(B), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C to the Local Rules of the United States District Court for the Western District of Texas.  Having reviewed the parties' briefing, relevant case law, and the case file, it is respectfully recommended that the motion for summary judgment be **DENIED**, as set forth more fully below.

1

## I.   BACKGROUND

Plaintiff Lance Brown ("Brown"), proceeding pro se, filed this action on December 7, 2012, alleging violations of his civil liberties at the hands of Williamson County Sheriff's Deputy Shawn Wilson ("Deputy Wilson") during a traffic stop. (Clerk's Dkt. No. 1). He named as defendants Deputy Wilson, Williamson County Sheriff James Wilson, the Williamson County Sheriff's Department, and Williamson County. By order dated February 10, 2014, the District Court dismissed with prejudice the claims against all defendants except Deputy Wilson. (Clerk's Dkt. No. 39).

In the Amended Complaint, filed October 30, 2014,[1] Brown alleges he used his middle finger as non-verbal communication and received a citation from Deputy Wilson for disorderly conduct as a result. Brown crumpled up the citation upon receipt, which caused Deputy Wilson to place him

---

[1] Per the District Court's order, Brown filed an amended complaint on August 16, 2013 ("First Amended Complaint"). (Clerk's Dkt. Nos. 14, 15). Deputy Wilson filed an answer to the First Amended Complaint on February 25, 2014. (Clerk's Dkt. No. 40). The deadline to file amended pleadings was August 1, 2014. (Clerk's Dkt. No. 48). Nevertheless, Brown filed a second amended complaint on October 30, 2014 ("Second Amended Complaint"), without seeking leave of court, after his previous complaint was partially dismissed with prejudice. (Clerk's Dkt. Nos. 51, 39). Brown filed a third amended complaint on March 2, 2015 ("Third Amended Complaint"), seven months after the amended pleadings deadline. (Clerk's Dkt. Nos. 56, 48).

Trial courts are required to freely grant leave to file an amended complaint, but leave to amend is by no means automatic. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citing FED. R. CIV. P. 15(a); and *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005)). In determining whether to grant leave to file an amend a complaint, the Court must consider five factors: (1) undue delay; (2) bad faith or dilatory motive on the part of the movant; (3) repeated failures to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party; and (5) futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Second Amended Complaint differed from the First Amended Complaint in a few minor ways. Brown removed the dismissed claims, reduced the damages claimed, and added legal authority supporting his remaining claim. The undersigned finds Deputy Wilson will not be prejudiced by the Second Amended Complaint, as it contained a substantially similar claim against him and the damages claims have been reduced. The undersigned also notes a lack of evidence of bad faith or repeated failure to cure deficiencies in the complaint. The late filing of the Second Amended complaint also does not seem to unduly delay the proceedings, as Deputy Wilson has had time to file a motion for summary judgment in response to the Second Amended Complaint, and the relevant discovery has been conducted. The Third Amended Complaint, however, was filed after Deputy Wilson's motion for summary judgment and after the January 31, 2015 dispositive motions deadline. Accordingly, the undersigned recommends the District Court find the operative complaint is the Second Amended Complaint, filed October 30, 2014. (Clerk's Dkt. No. 51).

in handcuffs.  Deputy Wilson called his supervising officer for authorization to take Brown to jail, and supervising officer advised him to let Brown go.  Brown asserts claims under 42 U.S.C. § 1983 for violations of his civil rights and seeks compensatory damages, punitive damages, injunctive relief, attorney's fees, interest, and costs.[2]

Deputy Wilson now moves for summary judgment, arguing no constitutional violation occurred, and, in the alternative, he is entitled to qualified immunity.  (Clerk's Dkt. No. 54). Responses have been filed and the motion is now ripe for determination.[3]

## II.   STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986)).  The court will view the summary judgment evidence in the light most favorable to the non-movant.  *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes

---

[2] The undersigned has liberally construed these allegations as § 1983 claims for First Amendment retaliation and Fourth Amendment unlawful seizure.

[3] Brown filed his response to the motion for summary judgment on March 2, 2015, 16 days after the deadline to respond expired.  (Clerk's Dkt. No. 56); W. D. TEX. CIV. R. 7(e)(2) (response to dispositive motion is due 14 days after filing of motion).  As Deputy Wilson has not objected and in the interest of justice, the undersigned nevertheless considers the response in the analysis herein.

demonstrates the absence of a genuine issue of material fact." *Davis v. Fort Bend Cty.*, 765 F.3d 480, 484 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial.  *Celotex*, 477 U.S. at 323; *Celtic Marine Corp. v. James C. Justice Co., Inc.*, 760 F.3d 477, 481 (5th Cir. 2014).  The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence.  *Celtic Marine*, 760 F.3d at 481 (citing *Celotex*, 477 U.S. at 325).  Once the non-movant has been given the opportunity to present evidence to create a genuine issue of fact, the court will grant summary judgment if no reasonable juror could find for the non-movant.  *Boos v. AT&T, Inc.*, 643 F.3d 127, 130 (5th Cir. 2011).

**III.    SUMMARY JUDGMENT EVIDENCE**

Brown testified in his deposition that on December 10, 2010, as he was driving his vehicle, he noticed a motorcycle police officer pulled over alongside the right side of the road "facing the opposite direction of the way [Brown] was headed."  (Def. Ex. C "Brown Depo." 8:1–8, 8:18, 9:17–18).  Brown did not recognize the police officer, but he "firmly gave the middle finger, the bird, whatever you want to call it, to [Deputy Wilson]."  (Brown Depo. 7:12–14).  Although Brown's car windows were rolled up, they are not tinted.  (Brown Depo. 9:9–11).  Deputy Wilson testified in his sworn affidavit that he saw Brown's vehicle and "immediately noticed it did not have a front license plate," and he saw Brown "give [him] the finger."  (Def. Ex. A "Wilson Aff." ¶ 2).  Deputy Wilson started his motorcycle, performed a U-turn, and began flashing his lights.  (Brown Depo. 9:17–20; Wilson Aff. ¶ 3).  Brown pulled over and Deputy Wilson approached Brown's vehicle.  (Brown Depo. 9:21–11:3).

4

Deputy Wilson pointed out to Brown that he did not have a front license plate. (Brown Depo. 10:11). Deputy Wilson also asked Brown why he displayed his middle finger. (Brown Depo. 11:4–9; Wilson Aff. ¶ 3). According to Brown, Deputy Wilson was angry and had a negative demeanor and asked "what gave [Brown] the right" to gesture at him with his middle finger. (Brown Depo. 10:7–20; 11:2–3). Brown replied that the United States Constitution gave him the right to display his middle finger. (Brown Depo. 10:8–10; Wilson Aff. ¶ 3).[4] Deputy Wilson told Brown that "Texas law [did] not see it that way." (Wilson Aff. ¶ 3). Deputy Wilson gave Brown a ticket for the missing front license plate, not having acquiring a Texas drivers license within 90 days of residing in Texas,[5] and for disorderly conduct based upon Brown's middle finger display. (Brown Depo. 15:10–21; Wilson Aff. ¶ 3).

When Deputy Wilson handed Brown the ticket, Brown crumpled it. (Brown Depo. 31:19–21). According to Deputy Wilson, Brown "appeared defiant or belligerent in demeanor and attitude" and threw the crumpled ticket on the floor of Brown's car. (Wilson Aff. ¶ 4). Brown, however, maintains he crumpled the ticket and placed it in his own pocket. (Brown Depo. 31:17–21). Deputy Wilson asked Brown to exit the vehicle and place his hands behind his back, and handcuffed Brown. (Wilson Aff. ¶ 4; Brown Depo. 29:21–30:1; 37:5–9).

Deputy Wilson had the "perception that [Brown] would probably fail to appear in court on the citations." (Wilson Aff. ¶ 4; *see also* Brown Depo. 35:12–21 (stating Officer Wilson viewed

---

[4] Brown also testified that he told Deputy Wilson he made the middle-finger gesture because he had gotten a ticket for his missing license plate the previous day, and maintained he could not get two tickets for the same violation. (Brown Depo. 11:10–13). Deputy Wilson testified that Brown stated he thought Deputy Wilson was another police officer who was sometimes at that location, which Brown denies. (Wilson Aff. ¶ 3). However, this testimony is inconsequential to the undersigned's analysis here.

[5] Brown had a Michigan drivers license at the time of the incident. (Wilson Aff. ¶ 3; Brown Depo. 15:17–16:10).

crumpling the ticket as "a sign of not showing up")).  Brown testified that he did not recollect what he said to Deputy Wilson after he received the ticket, but he denies saying he "would not take care of the ticket."  (Brown Depo. 32:1–12).  Deputy Wilson testified that he told Brown "[he] was probably going to arrest him because he was not taking the matter seriously."  (Wilson Aff. ¶ 4). Brown testified that Deputy Wilson never stated a reason why he was handcuffing Brown.  (Brown Depo. 37:5–9).

While Brown was handcuffed, Deputy Wilson radioed his supervising officer and explained what had transpired between himself and Brown.  (Wilson Aff. ¶ 4).  Deputy Wilson asked his supervising officer whether he could arrest Brown.  (Wilson Aff. ¶ 4; Brown Depo. 30:18–19).  The supervising officer instructed Deputy Wilson not to arrest Brown, and Deputy Wilson complied. (Wilson Aff. ¶ 4).  In total, Brown was handcuffed for a few minutes.  (Brown Depo. 30:1–6 (stating he was "probably" handcuffed for less than five minutes); Wilson Aff. ¶ 4 (stating Brown was in handcuffs for three or four minutes, but no more than five minutes)).

Brown pled guilty to the license plate citation and was never actually charged with the Texas drivers license ticket.  (Brown Depo. 16:16–20; Wilson Aff. ¶ 5).  Brown wrote a letter to Deputy Wilson, which Brown's attorney submitted to the Justice of the Peace, "offer[ing] an apology for [Brown's] actions" and stating, "[Deputy Wilson was] just performing the duties of [his] job." (Brown Depo. 38:7–15; Wilson Aff. ¶ 5).  The Justice of the Peace subsequently dismissed the disorderly conduct citation.  (Brown Depo. 38:23–39:10; Wilson Aff. ¶ 5).

## IV.  ANALYSIS

As a preliminary matter, the undersigned notes the District Court has previously issued an order on a motion for summary judgment in this case.  (Clerk's Dkt. No. 46).  Plaintiff filed a motion

for summary judgment, arguing it was undisputed that he received the disorderly conduct for displaying his middle finger.  As making an offensive gesture does not support a disorderly conduct citation,  Brown argued, his First Amendment rights were violated as a matter of law.  He further contended there was no probable cause for his detention after he received the citations.  (Clerk's Dkt. No. 41). The District Court denied summary judgment, noting that the parties' arguments focus on whether Wilson had probable cause to detain Brown after the traffic stop, and concluding "[a] probable cause inquiry is fact-intensive and, as such, is for the jury to decide."  (Clerk's Dkt. No. 46 at 3).  The District Court further found that "[w]hether Brown's actions constitute "fighting words," and are therefore barred by the disorderly conduct statute, "is a question of fact for the jury to decide."  (*Id.*) (citing *Coggin v. State*, 123 S.W.3d 82, 90 (Tex. App.—Austin 2003, pet. ref'd)). Consequently, the following analysis of Deputy Wilson's motion for summary judgment is made within the purview District Court's previous conclusions.

### A.    Constitutional Violation

Deputy Wilson argues there was no constitutional violation related to the traffic stop and temporary detention because he had probable cause to stop Brown due to the missing license plate, regardless of Brown's middle-finger gesture.  Deputy Wilson further maintains that even if he erroneously issued the disorderly conduct citation and handcuffed Brown, Brown's injuries are *de minimis* and do not rise to the level of a First or Fourth Amendment violation.

### 1.    First Amendment

The proposition that an individual cannot be retaliated against for expression protected by the First Amendment is uncontroversial.  *See Keenan v. Tejeda*, 290 F.3d 252, 259 (5th Cir. 2002) ("The First Amendment prohibits . . . adverse governmental action against an individual in retaliation

for the exercise of protected speech activities." (citation omitted)). A First Amendment retaliation claim requires Brown to show: (1) he was engaged in constitutionally protected activity; (2) Deputy Wilson's action caused an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) Deputy Wilson's adverse actions were substantially motivated against his exercise of the constitutionally protected activity. *Id.* at 258.

The Fifth Circuit has instructed that "[c]ourts need to be alert to arrests that are prompted by constitutionally protected speech, even when the [detainee's] words are directed at a police officer performing official tasks." *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008). *See also Lewis v. City of New Orleans*, 415 U.S. 130, 135 (1974) (Powell, J., concurring) (noting police officers might "reasonably be expected to exercise a higher degree of restraint than an average citizen, and thus be less likely to respond belligerently to 'fighting words'" (citation and internal quotation marks omitted)). "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston v. Hill*, 482 U.S. 451, 462–63 (1987).

Nevertheless, exempt from First Amendment protection are "fighting words," or those words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942). "Whether particular words constitute fighting words is a question of fact." *Coggin*, 123 S.W.3d at 90; *see also Leventhal v. Schaffer*, 743 F. Supp. 2d 990, 1002–03 (N.D. Iowa 2010) (collecting cases that held words or conduct did or did not constitute fighting words). "[W]ords may or may not be 'fighting words' depending upon the circumstances of their utterance," and that "a properly trained officer may reasonably be expected

8

to exercise 'a higher degree of restraint' than the average citizen, and thus be less likely to respond belligerently to 'fighting words.'" *Lewis*, 415 U.S. at 135 (Powell, J., concurring) (citation omitted).

A finding that Deputy Wilson had probable cause to cite Brown for a disorderly conduct violation would defeat Brown's First Amendment retaliation claim. *Mesa*, 543 F.3d at 273. The Texas Penal Code defines disorderly conduct as intentionally or knowingly making "an offensive gesture or display in a public place" when "the gesture or display tends to incite an immediate breach of the peace." TEX. PENAL CODE ANN. § 42.01(a)(2). "'Actual or threatened violence is an essential element of a breach of the peace.'" *Coggin*, 123 S.W.3d at 90 (quoting *Woods v. State*, 152 Tex. Crim. 338, 341, 213 S.W.2d 685, 687 (1948)). Section 42.01 of the Texas Penal Code applies only to fighting words, that is, speech that is exempt from First Amendment protection. *Id.* at 87 (collecting cases); *see also State v. Rivenburgh*, 933 S.W.2d 698, 701 (Tex. App.—San Antonio 1996, no writ) ("In order to pass constitutional muster, the offensive gesture or display must amount to 'fighting words.'"). Whether speech constitutes fighting words is a question of fact to be determined in light of the circumstances surrounding the expression. *Coggin*, 123 S.W.3d at 90.

It is undisputed that Deputy Wilson cited Brown specifically for displaying his middle finger. Deputy Wilson nonetheless contends he had probable cause to cite Brown for disorderly conduct because several courts have found the middle-finger gesture to constitute "fighting words" that tend to incite an immediate breach of the peace. The undersigned will address the most pertinent of the cases cited. The first, *Estes v. State*, involved a child's display of his middle finger to the school principal during a graduation ceremony. 660 S.W.2d 873 (Tex. App.—Fort Worth 1983, no pet.). The key difference between *Estes* and the instant case is the child gestured his middle finger within inches of the principal's face and extended his middle finger right under the principal's nose. *Id.* at

874. The court upheld the jury's finding that the gesture met the requirement that "actual or threatened violence is an essential element of breach of the peace." *Id.* at 875.

Deputy Wilson next cites *Henderson v. State*, wherein a woman outside of a nightclub repeatedly screamed "motherf[***]er" at the occupant of a vehicle and was detained by a police officer for disorderly conduct. 2011 WL 2162820, *4 (Tex. App.—Tyler 2011, no pet.). The court in *Henderson* found the word "motherf[***]er" to constitute fighting words justifying a detention in light of the circumstances. *Id.* ("The term 'motherf[***]er' has been held to be a fighting word . . . in some instances."). Ample evidence was presented indicating a breach of the peace was imminent. Specifically, the woman was in a crowd of 50 to 100 people yelling the obscenities at the occupant of a vehicle at 3:00 a.m. outside of a "b.y.o.b." nightclub known for criminal activity, including three stabbings the week prior to the detention. *Id.* Further, the detaining police officer testified that this type of situation often leads to an assault. *Id.*

Circumstances might exist under which displaying a middle finger could constitute an offensive gesture that would incite an immediate breach of the peace. *See Coggin*, 123 S.W.3d at 91–92 (finding that displaying a middle finger was not a breach of the peace but noting that under certain circumstances the gesture could be). However, Deputy Wilson has not provided competent summary judgment evidence that Brown's gesture alone would incite immediate breach of the peace. The gesture made from the inside of Brown's car while driving down a public thoroughfare simply does not rise to the level of physical intimidation or potential for violence described in the above cases. Given the fact-intensive nature of the probable cause inquiry and absent any evidence of actual or threatened violence as required by the Texas Penal Code, the undersigned is reluctant to conclude that Deputy Wilson had probable cause to cite Brown based on the evidence presented.

*See Spiller v. City of Texas City*, 130 F. 3d 162, 165–66 (5th Cir. 1997) (finding that plaintiff's shouting at officer to move his "damn truck" did not provide officer with probable cause to believe plaintiff's reference was likely to incite an immediate breach of the peace). Accordingly, a genuine issue of material fact for the jury to decide remains regarding whether probable cause existed to cite Brown for his gesture. Consequently, whether Brown was engaged in protected speech is yet to be determined.

Deputy Wilson next argues Brown's speech has not actually been chilled, therefore his First Amendment Retaliation claim must fail.[6] In support, Deputy Wilson directs the court to Brown's deposition testimony that he has displayed his middle finger "hundreds" of times to officers and members of the public since December 10, 2010. (Brown Depo. 29:16–22). Deputy Wilson also points out that when asked if it was "accurate to say this particular event has not inhibited or kept you from continuing to do what you consider to be expression of free speech," Brown answered in the affirmative. (Brown Depo. 43:7–11). However, the test is not whether Brown's speech has actually been chilled, rather, it is whether a "person of ordinary firmness" would be chilled from continuing to engage in that activity. *Keenan*, 290 F.3d at 258.

The Fifth Circuit has found that an ordinance regarding interrupting police that carried a misdemeanor charge and $200 maximum fine was sufficient to chill speech. *Hill v. City of Houston*, 789 F.2d 1103, 1110 (5th Cir. 1986), *aff'd*, 482 U.S. 451 (1987) ("The fact that the ordinance

---

[6] Deputy Wilson relies on *Vicknair v. La. Dep't of Wildlife & Fisheries* to support the contention that an erroneous disorderly conduct citation alone fails to rise to the level of a constitutional violation. 2013 WL 1180834 (W.D. La. Jan. 29, 2013). The court in *Vicknair* found that "when a suspect is neither arrested nor detained, but instead is merely summoned to appear in court to answer charges without additional restriction, there is no cognizable Fourth Amendment claim." *Id.* at *7 ("No court has held that a summons alone constitutes a seizure . . . To hold otherwise would transform every traffic ticket and jury summons into a potential Section 1983 claim."). However, the court in *Vicknair* did not address the implications of citing a person for his speech. Accordingly, *Vicknair* is inapplicable to the analysis here.

punishes as misdemeanors its violations and limits its fines to $200 does not diminish the chill the enforcement of the ordinance creates. The real penalty is a trip to the city jail in the back of a squad car and having to post bond even if one later protests the charge and is found innocent."). Other courts have also held citations and tickets were sufficient to chill the speech of a person of ordinary firmness. *See Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003) (selective issuance of parking tickets totaling $35 could support retaliation cause of action); *Journaleros de Las Palmas v. City of League City*, 945 F. Supp. 2d 779, 794 (S.D. Tex. 2013) (concluding as a matter of law that chilling speech "is a constitutional harm sufficient to satisfy the [standing] injury-in-fact requirement" and making a factual finding that plaintiffs "have experienced a chilling of their free speech rights due to citations, arrests, and fear of future arrests"). Further, the evidence establishes Brown retained an attorney and wrote an apology letter to get the charges dismissed. A reasonable juror could find a disorderly conduct citation, being handcuffed for crumpling said citation, and hiring an attorney to defend against the citation might chill the speech of a person of ordinary firmness, therefore the undersigned declines to make a finding as matter of law on this issue. *See Holzemer v. City of Memphis*, 621 F.3d 512, 524 (6th Cir. 2010) (whether retaliatory action, which need not be extreme, would chill speech of person of ordinary firmness is question of fact for the jury; therefore, if a reasonable juror could conclude the action would chill speech, summary judgment may not be granted).

Deputy Wilson makes no argument as to whether his citation of Brown was "substantially motivated" by the plaintiff's exercise of the constitutionally protected activity. The summary judgment evidence establishes that Deputy Wilson admits he cited Brown specifically for the middle-finger gesture. Having found there remains a genuine issue of material fact regarding whether the

middle-finger gesture was constitutionally protected activity, and whether a citation for the middle-finger gesture would chill the speech of a person of ordinary firmness is a question for the jury, the undersigned recommends the District Court deny the motion for summary judgment on Brown's First Amendment retaliation claim. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (at the summary judgment stage, the court must "refrain from making credibility determinations or weighing the evidence.").

### 2.     Fourth Amendment

A routine traffic stop constitutes a "seizure" under the Fourth Amendment and requires reasonable suspicion, at minimum, or probable cause to believe a crime has been committed. *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004).   Courts analyze traffic stops for Fourth Amendment purposes under the standard articulated in *Terry v. Ohio*, 392 U.S. 1 (1968). *United States v. Pack*, 612 F.3d 341, 349–50 (5th Cir. 2010).   First, courts must examine whether the officer's decision to stop the vehicle was justified at its inception. *Id.* at 350. Second, courts must determine whether "the officer's subsequent actions were reasonably related in scope to the circumstances that caused him to stop the vehicle in the first place." *Id.*

If the officer's subsequent actions are not reasonably related in scope to the circumstances that justified the initial stop, the officer must let the occupants of the vehicle go after either a reasonable time for investigation has passed, or a citation has been issued. *United States v. Santiago*, 310 F.3d 336, 341–42 (5th Cir. 2002).   Once a citation has been issued, the officer cannot continue to detain the occupant of the vehicle unless the officer develops reasonable suspicion of additional criminal activity. *Id.* at 342.   Reasonable suspicion must be supported by "articulable facts that a

crime has been or is being committed." *Id.* (citing *United States v. Jones*, 234 F.3d 234, 241 (5th Cir. 2000)).

"Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of [detention] are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Mesa*, 543 F.3d at 269.  "It is well-settled that when probable cause exists to believe that someone is violating a criminal statute, his or her [detention or citation] is reasonable." *Johnson v. City of Dallas*, 141 F. Supp. 2d 645, 647 (N.D. Tex. 2001) (citing *Atwater v. City of Lago Vista*, 195 F.3d 242, 245 (5th Cir. 1999)).  So long as an officer has an independent source of probable cause to believe the stopped individual committed a crime, any subjective intent behind the stop is immaterial.  *See Ashcroft v. al-Kidd*, __U.S.__, 131 S. Ct. 2074, 2080 (2011) (citing *Whren v. United States*, 517 U.S. 806, 814 (1996)) (Fourth Amendment reasonableness is determined by asking whether "circumstances, viewed objectively, justify [the challenged] action . . . . If so, that action was reasonable '*whatever*' the subjective intent motivating the relevant officials."); *United States v. Lopez-Moreno*, 420 F.3d 420, 432 (5th Cir. 2005) ("Supreme Court and Fifth Circuit precedent has made clear that an officer's subjective intentions have no impact on analyzing reasonable suspicion or probable cause because they are both considered to be based on an objective test.").

Deputy Wilson's uncontroverted sworn affidavit establishes that he believed he had probable cause to stop Brown because his front license plate was missing.  (Wilson Aff.  ¶ 3).  Moreover, it is undisputed that Brown was cited for failing to display a license plate, a citation to which Brown has pled guilty.  (*Id.* ¶ 5).  Accordingly, regardless of whether Deputy Wilson was angered by Brown's display of his middle finger, he had an independent source of probable cause to pull over

14

Brown and the initial stop was justified.  *See Webb v. Arbuckle*, 456 F. App'x 374, 380 (5th Cir. 2011) (listing cases that found officer's subjective intent or pretextual reason for arrest did not render arrest unconstitutional if independent, objective probable cause to arrest existed at time of arrest); *United States v. Castro*, 166 F.3d 728, 734 (5th Cir. 1999) (officers' subjective intent is irrelevant to objective reasonableness analysis).

The issue, therefore, is whether Deputy Wilson's continued detention and handcuffing of Brown after he was cited rose to the level of a constitutional violation.  Deputy Wilson first contends he handcuffed Brown for such a short period that it did not rise to the level of a constitutional violation.  However, "[t]he Fourth Amendment's requirement that searches and seizures be founded upon objective justification, governs all seizures of the person, 'including seizures that involve only a brief detention short of traditional arrest."  *United States v. Mendenhall*, 446 U.S. 554, 551 (1980) (quoting *Davis v. Mississippi*, 394 U.S. 721 (1969)).  *See also United States v. Valencia*, 224 F.3d 765, 766 (5th Cir. 2000) (Fourth Amendment applies to brief detention short of traditional arrest); *cf. United States v. Brignoni-Ponce*, 422 U.S. 873, 879–81 (1979) (brief detention for purpose of questioning and determination of whether suspect is dangerous is constitutional).

Because Deputy Wilson had cited Brown for the reason for the stop, i.e., his missing license plate and his purported disorderly conduct, he must articulate specific facts leading to his belief that Brown committed another criminal act. *United States v. Valadez*, 267 F.3d 395, 398 (5th Cir. 2001) ("[O]nce an officer's suspicions have been verified or dispelled, the detention must end unless there is additional articulable, reasonable suspicion.").  Deputy Wilson maintains he believed Brown's

crumpling of the citation indicated his intention not to appear in court to address the citations.[7] Brown, however, counters that he never indicated he would not appear in court, and that Deputy Wilson never told him why he was being arrested.   Brown also states he crumpled the ticket and placed it in his pocket, while Deputy Wilson contends Brown threw the ticket on the floor of his car. Accordingly, there are genuine issues of material fact regarding whether the Deputy Wilson's continued detention of Brown was supported by articulable, reasonable suspicion.  *See Trent v. Wade*, 776 F.3d 368, 382 (5th Cir. 2015) (noting genuine issues of material fact regarding reasonable suspicion preclude summary judgment) (citing *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)).   Similarly, the probable cause inquiry here is fact-intensive, and, as such, is for the jury to decide. *See United States v. Hearn*, 563 F.3d 95, 102 (5th Cir. 2009) (existence of probable cause is a mixed question of fact and law).   Accordingly, summary judgment should be denied on Brown's Fourth Amendment claim.

### B.      Qualified Immunity

The test for qualified immunity is a two-pronged inquiry, examining first whether the plaintiff has alleged a violation of a clearly established constitutional right, and second whether the defendant's conduct was objectively reasonable in light of clearly established law.  *Thompson v. Upshur Cty.*, 245 F.3d 447, 457 (5th Cir. 2001).  *See Brown*, 623 F.3d at 253 (court may rely on either prong of qualified immunity defense in its analysis).   The Supreme Court has explained that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  The very

---

[7] Deputy Wilson does not specify which criminal statute he believes Brown violated by crumpling up the citation.

action in question need not have been previously held unlawful, but the unlawfulness of the action must be apparent in light of preexisting law. *Id.* "If the court answers both the constitutional violation and the clearly established question in the affirmative, the officer is not entitled to qualified immunity." *Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009).

### 1. First Amendment

Deputy Wilson contends he is entitled to qualified immunity because there was no clearly established Fifth Circuit or Supreme Court law at the time he cited Brown "that the display of the middle finger could not support a disorderly conduct citation, or that the display of the middle finger was a protected form of expression under the First Amendment such that a disorderly conduct citation for the use of the gesture would be a constitutional violation." (Def. Mot at 2–3). The undersigned reiterates its previous finding that this argument states the constitutional question too narrowly. (Clerk's Dkt. No. 36 at 14). The very action of arresting someone for displaying their middle finger need not be held unlawful, according to *Anderson*, 483 U.S. at 640. Instead, the court must examine whether it was clearly established at the time Brown was cited that obscene gestures and profane language are constitutionally protected speech not subject to criminal punishment, even when aimed at police officers.

As detailed in the undersigned's previous Report & Recommendation on the motion to dismiss, the Supreme Court has long held that conduct or gestures may be "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments." *Spence v. Washington*, 418 U.S. 405, 409 (1974) (citing *United States v. O'Brien*, 391 U.S. 367, 376 (1968)). For just as long, the Supreme Court has rejected on First Amendment grounds blanket attempts by municipalities to outlaw profane language or offensive conduct directed toward police

17

officers. *Hill*, 482 U.S. at 455; *Lewis*, 415 U.S. at 132–33. *See Spiller*, 130 F.3d at 165–66 (finding plaintiff's shouting at officer to move his "damn truck" did not provide officer with probable cause to believe plaintiff's reference was likely to incite an immediate breach of the peace and denying officer qualified immunity); *Vela v. White*, 703 F.2d 147, 152 (5th Cir. 1983) (police lacked probable cause to arrest woman for disorderly conduct when she called him a fool absent evidence words "would likely have a direct tendency to incite an ordinary person to violence"); *Coggin*, 123 S.W.3d at 90 (finding that displaying a middle finger was not a breach of the peace but noting that under certain circumstances the gesture could be); *Jimmerson v. Texas*, 561 S.W.2d 5, 7 (Tex. Crim. App. 1978) (en banc) (mere use of profane language did not provide probable cause for disorderly conduct arrest). *Cf. Ross v. State*, 802 S.W.2d 308, 315 (Tex. App.—Dallas 1990, no pet.) (affirming disorderly conduct conviction because there was "sufficient evidence to show that [defendant's] words not only tended to incite a breach of the peace, but that she actually did incite a breach of the peace").

Deputy Wilson argues that the applicable law was not clearly established because Texas courts use an objective "average addressee" test, and have on several occasions found that the middle-finger gesture constituted "fighting words." *See Estes*, 660 S.W.2d 873 (middle-finger gesture underneath principal's nose constituted fighting words); *Henderson*, 2011 WL 2162820, *4 (repeatedly screaming "motherf[***]er" at vehicle occupant in crowded parking lot at 3:00 a.m. in front of b.y.o.b. bar tended to incite immediate breach of peace). As noted above, a disorderly conduct arrest must be supported by a showing that the arrestee used "fighting words" that would tend to incite a breach of the peace, even when the disputed conduct is aimed at a police officer, and that gestures alone are not fighting words. (Clerk's Dkt. No. 36). *See also Freeman v. Gore*, 483

18

F.3d 404, 414 n.7 (5th Cir. 2007) (police officers are expected to exercise higher degree of restraint than average citizen); *Spiller*, 130 F.3d at 165 (police officers are reasonably "expected to exercise a higher degree of restraint than an average citizen, and thus be less likely to respond belligerently to fighting words" (quoting *Lewis*, 415 U.S. at 135 (Powell, J., concurring))); *Enlow v. Tishomingo Cty. Miss.*, 962 F.2d 501, 509 (5th Cir. 1992) (same); *Hill*, 789 F.2d at 1112 (same).

The undersigned cannot find, nor has Deputy Wilson cited to, any Texas, Fifth Circuit, or Supreme Court case that states gestures are fighting words, in the absence of some evidence of actual or threatened violence that would cause the average addressee to have a violent reaction. *See Estes*, 660 S.W.2d 873 (middle-finger gesture within inches of principal's face and underneath his nose was sufficient to establish threatened violence that would cause average addressee to have violent reaction). Because, as described above, Deputy Wilson has failed to provide evidence that Brown's middle-finger gesture tended to incite an immediate breach of the peace, the undersigned again finds the law was clearly established that an apparently offensive gesture alone does not constitute "fighting words" within the meaning of the Texas disorderly conduct statute. *See Coggin*, 123 S.W.3d at 90 (breach of peace requires actual or imminent threat of violence). Viewing the evidence in the light most favorable to Brown, it was clearly established that citing Brown for a gesture alone would violate his First Amendment rights.

The undersigned now turns to the second qualified immunity prong—whether a reasonable police officer could have believed that, in light of the clearly established law described above, Deputy Wilson's citation of Brown for disorderly conduct and subsequent detention were lawful. Based on the factual disputes detailed above, this question relies on questions of fact for the jury to decide. *Spiller*, 130 F. 3d at 166; *Morgan v. City of DeSoto, Tex.*, 900 F.2d 811, 815–14 (5th Cir.

19

1990) ("[w]hether a reasonable officer could have concluded that there was a reasonable likelihood" that a crime was being committed is a question of fact).  Specifically, it is for a jury to decide whether a reasonable police officer would have believed the middle-finger gesture, coupled with any relevant facts, constituted disorderly conduct.  *See Trent*, 776 F.3d at 382–83 (genuine issue of material fact existed regarding whether police officer developed reasonable suspicion that crime had been committed precluding summary judgment on issue of qualified immunity); *Mesa*, 543 F.3d at 269 (qualified immunity is question of law, but where "there remain disputed issues of material fact relative to immunity, the jury, properly instructed, may decide the question" (quoting *Presley v. City of Benbrook*, 4 F.3d 405, 410 (5th Cir.1993))).

Accordingly, absent any summary judgment evidence that Brown did more than make a gesture with his middle finger from afar, the undersigned will not controvert the clearly established law that a gesture alone does not constitute "fighting words" within the meaning of the First Amendment and Texas disorderly conduct statute.  Qualified immunity on Brown's First Amendment claim should therefore be denied at this stage.

### 2.  Fourth Amendment

Deputy Wilson makes no qualified immunity argument regarding the continued detention and handcuffing of Brown.  Nevertheless, construing the facts in favor of the non-movant, Brown has stated a constitutional violation of his Fourth Amendment right to be free from unreasonable seizure due to the prolonged detention after he was cited for the reason he was initially stopped.  *See Santiago*, 310 F.3d at 342 (once citation has been issued, officer cannot continue to detain the occupant of the vehicle unless the officer develops reasonable suspicion of additional criminal activity).  The right to be free from a prolonged detention unsupported by particularized reasonable

suspicion to believe the detainee had committed a crime is clearly established.  *See United States v.*
*Banuelos-Romero*, 597 F.3d 763, 766 (5th Cir. 2010) (right to be free from unreasonable search and
seizure, including prolonged detention following traffic stop is undisputed).  Additionally, in light
of the disputed factual issues surrounding the prolonged detention, whether a reasonable officer
would have believed the seizure was lawful can be determined "[o]nly when all the facts have been
determined by the jury."  *White v. Walker*, 950 F.2d 972, 977 (5th Cir. 1991).  *See also Lockett v.*
*New Orleans City*, 607 F.3d 992, 1001 (5th Cir. 2010) (reasonableness of Fourth Amendment search
and seizure depends on circumstances surrounding seizure).  The undersigned therefore recommends
the District Court deny summary judgment on Fourth Amendment claim on the basis of qualified
immunity.  Deputy Wilson is thus not entitled to qualified immunity at the motion for summary
judgment stage, and the motion for summary judgment should be denied.  *See also Mesa*, 543 F.3d
at 269, 272 (mistake reasonably made as to probable cause justifies qualified immunity, but genuine
issue of material fact regarding whether officer had probable cause to arrest precludes summary
judgment on basis of qualified immunity).

## V.   RECOMMENDATION

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that the District
Court **DENY** Defendant's Motion for Summary Judgment (Clerk's Dkt. No. 54).

The undersigned further **RECOMMENDS** that the District Court **ORDER** that the operative
complaint is the Second Amended Complaint filed October 30, 2014 (Clerk's Dkt. No. 52).

## VI.   OBJECTIONS

The parties may file objections to this Report and Recommendation.   A party filing
objections must specifically identify those findings or recommendations to which objections are

being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

**SIGNED** on April 29, 2015.

_____

MARK LANE
UNITED STATES MAGISTRATE JUDGE

22