UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LANCE BROWN, | § | CV No. 1:12-CV-1122-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| SHAWN WILSON, | § | |
| | § | |
| Defendant. | § | |

ORDER ADOPTING IN PART AND VACATING IN PART MAGISTRATE
JUDGE'S REPORT AND RECOMMENDATION

Before the Court are Objections to the Magistrate Judge's Report and Recommendation filed by Defendant Shawn Wilson ("Defendant" or "Wilson") (Dkt. # 61).  The Court held a hearing on the Objections and the underlying Report and Recommendation on July 8, 2015.  At the hearing, Plaintiff Lance Brown ("Plaintiff" or "Brown") represented himself pro se, and Henry W. Prejean, Esq., represented Defendant.  After careful consideration Defendant's Objections and the arguments submitted at the hearing, the Court, for the reasons that follow, **ADOPTS IN PART AND VACATES IN PART** the Magistrate Judge's Report and Recommendation (Dkt. # 59).

BACKGROUND

This case arises out of a traffic stop conducted by Defendant, a Williamson County Sherriff's Office deputy.  On the morning of December 10,

2010, Plaintiff was driving his car and observed Defendant parked along the side of the road working a traffic patrol.  ("Wilson Aff.," Dkt. # 54-1, Ex. A ¶ 2; "Brown Dep.," Dkt. # 54-1, Ex. C at 6:2–10, 8:1–8.)  Plaintiff did not recognize Defendant, but as he drove by, he "firmly gave [Defendant] the middle finger, the bird, whatever you want to call it," through the closed window of his car.  (Brown Dep. 7:12–14, 9:2–15.)  Defendant "immediately noticed" that Plaintiff's vehicle did not have a front license plate, and subsequently saw Plaintiff looking at him and giving him the finger as he drove by.  (Wilson Aff. ¶ 2.)  Defendant then pulled Plaintiff over.  (Wilson Aff. ¶ 3; Brown Dep. 9:16–23.)

Defendant walked to Plaintiff's car, asked why Plaintiff had given him the finger, and inquired about the absence of a front license plate on the car. (Brown Dep. 10:2–11, 11:4–9; Wilson Aff. ¶ 3.)  Plaintiff stated that he had a constitutional right to display his middle finger, to which Defendant responded that Texas law did not see it that way.  (Brown Dep. 10:8–10; Wilson Aff. ¶ 3.)  Defendant believed that giving someone the finger was a violation of Texas's disorderly conduct statute.  (Wilson Aff. ¶ 3.)  Defendant cited Plaintiff for not having a front license plate, disorderly conduct, and failure to obtain a Texas driver's license within 90 days of moving to Texas.  (Id.)

Upon receiving the citations, Plaintiff crumpled up the ticket.  (Brown Dep. 35:9–11; Wilson Aff. ¶ 4.)  The parties dispute whether Plaintiff threw the

2

crumpled ticket onto the floor of his car or whether he merely put it in his pocket. (Brown Dep. 9–21.)  In any case, Defendant then asked Plaintiff to exit the vehicle and place his hands behind his back, and placed Plaintiff in handcuffs.  (Wilson Aff. ¶ 4.)  Defendant believed that Plaintiff's act of crumpling the ticket indicated that he would likely fail to appear in court as required.  (Id.; Brown Dep. 35:12–21.)  While Plaintiff was handcuffed, Defendant called his supervising officer to ask whether he should formally arrest Brown.  (Wilson Aff. ¶ 4; Brown Dep. 30:13–19.)  Defendant's supervisor instructed him not to arrest Plaintiff, and Defendant then removed the handcuffs and allowed Plaintiff to go on his way.  (Wilson Aff. ¶ 4.)  Plaintiff was handcuffed for between three and five minutes, and was not in physical pain during that time.  (Id.; Brown Dep. 30:1–12.)

Plaintiff pled guilty to the citation for failure to display a front license plate, and was not charged with failing to acquire a Texas driver's license within 90 days of moving to Texas.  (Brown Dep. 16:16–20; Wilson Aff. ¶ 5.)  The citation for disorderly conduct was dismissed by a justice of the peace after Plaintiff submitted a letter to Defendant apologizing for his actions and asking that Defendant not "take my actions on a personal level."  (Brown Dep. 38:7–15; Wilson Aff. ¶ 5.)

Plaintiff filed suit in this Court on December 7, 2012.  (Dkt. # 1.)  Plaintiff filed a Second Amended Complaint on October 30, 2014, alleging that

Defendant had violated his constitutional rights by citing him for disorderly conduct and unlawfully restraining him after Plaintiff crumpled the ticket. (Dkt. # 52.) Plaintiff seeks damages under 42 U.S.C. § 1983, an order enjoining Defendant from further acts of discrimination or retaliation, and costs and reasonable attorneys' fees. (Id.)

Defendant filed the instant Motion for Summary Judgment on January 31, 2015. Plaintiff filed a Response on March 2, 2015 (Dkt. # 57), and Defendant filed a Reply on March 9, 2015 (Dkt. # 58). The Magistrate Judge issued a Report and Recommendation on April 29, 2015, recommending that the Court deny Defendant's Motion. (Dkt. # 59.) Defendant filed his Objections to the Report and Recommendation on May 13, 2015. (Dkt. # 61.)

## LEGAL STANDARD

The Court must conduct a de novo review of any of the Magistrate Judge's conclusions to which a party has specifically objected. See 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Any party may contest the Magistrate Judge's findings by filing written objections within fourteen days of being served with a copy of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(C). The objections must specifically identify those findings or recommendations that the party wishes to

4

have the district court consider. Thomas v. Arn, 474 U.S. 140, 151 (1985). A district court need not consider "[f]rivolous, conclusive, or general objections." Battle v. U.S. Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987) (quoting Nettles v. Wainwright, 677 F.2d 404, 410 n.8 (5th Cir. 1982), overruled on other grounds by Douglass v. U.S. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996)).

Findings to which no specific objections are made do not require de novo review; the Court need only determine whether the Report and Recommendation is clearly erroneous or contrary to law. United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir. 1989).

## DISCUSSION

I.   Qualified Immunity

Defendant argues that the Magistrate Judge erred in failing to grant summary judgment in his favor on the basis that he is entitled to qualified immunity. The Court will therefore review de novo the Magistrate Judge's findings as to whether Defendant is entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests—the need

to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id.  Because qualified immunity is immunity from suit rather than a defense to liability, immunity questions should be resolved at the earliest possible stage in litigation. Id. at 231–32.

Determining whether a government official is entitled to qualified immunity requires a two-step inquiry into (1) whether the facts shown by plaintiff establish violation of a constitutional right, and (2) if so, whether the right was clearly established at the time of the defendant's alleged misconduct. Id. at 232. With regard to whether a right was clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). While the very action in question need not have been previously held unlawful, the unlawfulness of the action must be apparent in light of pre-existing law. Id. "For immunity to apply, the actions of the officer must be objectively reasonable under the circumstances, such that a reasonably competent officer would not have known his actions violated then-existing clearly established law." Mesa v. Prejean, 543 F.3d 264, 269 (5th Cir. 2008) (internal quotation marks omitted).  The focus of the inquiry "should be on 'fair warning': qualified immunity is unavailable . . . so long as the prior decisions gave reasonable warning that the conduct then at issue

violated constitutional rights." Wernecke v. Garcia, 591 F.3d 386, 393 (5th Cir. 2009) (internal quotation marks omitted).

Plaintiff's Second Amended Complaint alleges two separate violations of his constitutional rights in his interaction with Defendant: Defendant's citation of Plaintiff for disorderly conduct after Plaintiff gave Defendant the middle finger, and Defendant's restraining Plaintiff in handcuffs for between three and five minutes after Plaintiff crumpled up the ticket.  (Dkt. # 52 ¶¶ 18–19.)  The Court will consider whether Defendant is entitled to qualified immunity as to each claim in turn.

    A.    Citation for Disorderly Conduct[1]

In addition to citing Plaintiff for a missing front license plate and for failure to acquire a Texas driver's license within 90 days of residing in Texas,

---

[1] The Magistrate Judge's analysis of this issue framed the constitutional question as whether Defendant's conduct was adverse government action in retaliation for the exercise of protected speech.  The Court, however, believes the more appropriate analysis is whether Defendant's citation of Plaintiff for disorderly conduct was an unconstitutional application of Texas Penal Code section 41.02.  First Amendment retaliation claims generally stem from burdens, unrelated on their face to the exercise of First Amendment rights, imposed by government to penalize persons for exercise of their rights.  See Colson v. Grohman, 174 F.3d 498, 508–09 (5th Cir. 1999) (contrasting "direct limitations on speech" with retaliation for exercising First Amendment freedoms and providing examples of government placing conditions on public benefits or making employment decisions on the basis of a person's speech, beliefs, or association).  While the Fifth Circuit has applied First Amendment retaliation law to alleged police harassment outside of an employment or contractual relationship, Keenan v. Tejeda, 290 F.3d 252 (5th Cir. 2002), the citation issued by Defendant here was a direct limitation on speech—an application of the disorderly conduct law to punish Plaintiff's offensive gesture.

Defendant also cited Plaintiff for disorderly conduct based on Plaintiff's display of his middle finger. (Wilson Aff. ¶ 3.) The relevant portion of Texas's disorderly conduct statute provides that "[a] person commits an offense if he intentionally or knowingly makes an offensive gesture or display in a public place, and the gesture or display tends to incite an immediate breach of the peace." Tex. Penal Code § 42.01(a)(2). Because the First Amendment prohibits laws that abridge the freedom of speech, Texas courts have "uniformly held that section 42.01 applies to fighting words," which are not protected under the First Amendment. Coggin v. State, 123 S.W.3d 82, 87 (Tex. App. 2003); see also Spiller v. City of Tex. City, Police Dep't, 130 F.3d 162, 165 (5th Cir. 1997) (reviewing Texas case law on the application of the disorderly conduct statute to speech); Vela v. White, 703 F.2d 147, 152 (5th Cir. 1983) ("As explained in the Commentary printed in Vernon's Penal Code, that section [42.01] is designed to punish so-called 'fighting words,' defined in Chaplinsky v. New Hampshire and Gooding v. Wilson." (citations omitted)).

Fighting words are "those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." Chaplinsky v. New Hampshire, 315 U.S. 568, 572 (1942). Stated differently, fighting words are "those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent

8

reaction." Virginia v. Black, 538 U.S. 343, 359 (2003) (quoting Cohen v. California, 403 U.S. 15, 20 (1971)).  Texas courts construing the disorderly conduct statute have held that "[a]ctual or threatened violence is an essential element of a breach of the peace." Coggin, 123 S.W.3d at 90 (quoting Woods v. State, 213 S.W.2d 385, 387 (Tex. Crim. App. 1948)).  Whether an act or utterance constitutes fighting words is a question of fact considered in light of all of the circumstances. See Spiller, 130 F.3d at 165–66; Coggin, 123 S.W.3d at 90.

   Here, it is undisputed that Plaintiff has alleged a violation of his constitutional right to freedom of expression.  In determining whether a right is clearly established, the Court looks to controlling precedent from the Fifth Circuit and the Supreme Court.  Morgan v. Swanson, 659 F.3d 359, 371–72 (5th Cir. 2011).  "[W]here no directly controlling authority prohibits the defendants' conduct, we look to the law of other jurisdictions in assessing whether a reasonable official would have known that his conduct was unlawful." Id. at 372 n.26 (internal quotation marks omitted) (quoting McClendon v. City of Columbia, 305 F.3d 314, 329 (5th Cir. 2002) (en banc)).

   It has long been the law that Texas's disorderly conduct statute prohibits only fighting words, Woods, 213 S.W.2d at 387, and that fighting words are limited to those "personally abusive epithets . . . inherently likely to provoke violent reaction," Black, 538 U.S. at 359.  Defendant argues, however, that

whether the right allegedly violated was clearly established must be examined in the "particularized factual context" of the circumstances at issue.  (Dkt. # 61 at 6.)  Under Defendant's view, the Court should ask whether the display of the middle finger was clearly established as a protected form of expression under the First Amendment.  (Id.)  Defendant argues that under Fifth Circuit precedent, it is not clearly established that citing a person for gesturing with the middle finger under Texas's disorderly conduct statute violates the person's constitutional rights, and that Defendant is therefore entitled to qualified immunity.  (Id.)

As stated above, however, it is not necessary that the very action in question have "previously been held unlawful"; it is sufficient that the unlawfulness of the official action be apparent "in the light of pre-existing law."  Anderson, 483 U.S. at 640.  The "contours of the right" at issue have long been clear—speech or expressive conduct cannot be criminalized as disorderly conduct unless it would be "likely to provoke the average person to retaliation, and thereby cause a breach of the peace."  Chaplinsky, 315 U.S. at 575.  Fifth Circuit precedent is to the same effect.  See Spiller, 130 F.3d at 165 (holding that yelling at a plainclothes police officer to move his "damn truck," while the plaintiff waited inside her vehicle, could not reasonably be interpreted as fighting words); Vela, 703 F.2d at 152 (holding that only "words which would likely have a direct tendency to incite an ordinary person to violence" could be charged under section

42.01).  The Court thus finds that the law was clearly established that only fighting words are subject to regulation under the disorderly conduct statute.[2]

Here, the undisputed facts show that Plaintiff, while driving his car, "firmly gave the middle finger" to Defendant as Plaintiff drove by.  (Brown Dep. 7:6–14.)  Plaintiff gestured through the closed window of his moving vehicle, and "was not part of a confrontational face-to-face exchange."  See Spiller, 130 F.3d at 165.  While offensive, Plaintiff's gesture, directed toward an on-duty police officer while Plaintiff was driving by, was not "a direct personal insult or an invitation to exchange fisticuffs."  See Texas v. Johnson, 491 U.S. 397, 398 (1989); see also Spiller, 130 F.3d at 165 (noting that a police officer "may reasonably be expected to exercise a higher degree of restraint than the average citizen, and thus be less likely to respond belligerently to fighting words" (quoting Lewis v. City of New Orleans, 415 U.S. 130, 135 (1974) (J. Powell, concurring) (internal quotation marks omitted))).  Without any indication of "actual or threatened violence,"

---

[2] In addition to this direct controlling authority, which establishes that expression that does not amount to fighting words may not be punished as disorderly conduct, the Court also notes that other courts have found that use of the middle finger while driving did not qualify as fighting words.  See Coggin, 123 S.W.3d at 90 (reversing conviction for disorderly conduct where the defendant showed his middle finger to the driver of another vehicle while passing on a highway"); State v. Rivenburgh, 933 S.W.2d 698, 701 (Tex. App. 1996) (affirming trial court's finding that stop for disorderly conduct based on driver giving middle finger to another driver via the rear view mirror while at a stoplight was not supported by probable cause); Swartz v. Insogna, 704 F.3d 105, 110 (2d Cir. 2013) (holding that giving middle finger to a police car while driving by did not justify a traffic stop of the vehicle).

11

Woods, 213 S.W.2d at 387, Plaintiff's gesture could not reasonably be interpreted as "tend[ing] to incite an immediate breach of the peace," Tex. Penal Code § 42.01(a)(2).

Based on the undisputed facts, the Court finds that Plaintiff's conduct did not amount to fighting words and thus did not violate section 41.02, and that Defendant's citation of Plaintiff under that statute based was therefore unreasonable. As a result, Defendant is not entitled to qualified immunity on the part of Plaintiff's § 1983 claim based on his citation for disorderly conduct.

B. Placing Plaintiff in Handcuffs

Plaintiff also alleges that Defendant violated his constitutional rights by restraining him in handcuffs after he crumpled up the citation. It is not clear from Plaintiff's Second Amended Complaint or his Response to Defendant's Motion for Summary Judgment whether he is alleging a violation of his Fourth Amendment right to be free from unreasonable seizures, or if he is alleging that he was handcuffed in retaliation for engaging in protected speech. Because the Plaintiff is pro se, and the undisputed facts support a colorable claim for violations of both the Fourth and First Amendments, the Court will address whether Defendant is entitled to qualified immunity as to both theories of liability.

12

1.     Illegal Seizure

The legality of traffic stops under the Fourth Amendment is analyzed under the standard articulated by the Supreme Court in Terry v. Ohio, 392 U.S. 1 (1968). United States v. Pack, 612 F.3d 341, 349–50 (5th Cir. 2010), opinion modified on other grounds by 622 F.3d 383 (5th Cir. 2010). A Terry stop is justified where an officer has either reasonable suspicion or probable cause to believe that a crime has been committed. United States v. Brigham, 382 F.3d 500, 506 (5th Cir. 2004). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." Mesa v. Prejean, 543 F.3d 264, 269 (5th Cir. 2008). An officer's subjective intentions are irrelevant to determining whether the officer had reasonable suspicion or probable cause for the seizure. United States v. Lopez-Moreno, 420 F.3d 420, 432 (5th Cir. 2005).

There is no question that Defendant had probable cause for the initial vehicle stop based on the undisputed fact that Plaintiff's car failed to display a front license plate. The only issue is whether placing Plaintiff in handcuffs for three to five minutes while Defendant was speaking to his supervisor was an unreasonable seizure in violation of the Fourth Amendment.

It is well-established that the Fourth Amendment allows a peace officer to arrest an individual upon finding probable cause to believe that the individual has committed a misdemeanor in the officer's presence. Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001). Texas statute explicitly authorizes warrantless arrests of a person found committing a violation of the Transportation Code. Tex. Transp. Code § 543.001; see also Tex. Code Crim. Proc. art. 14.01(b) ("A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."). Defendant was thus authorized to arrest Plaintiff based on Plaintiff's undisputed failure to display a front license plate in violation of section 504.943 of the Texas Transportation Code.

While an arrest made with probable cause may nevertheless violate Fourth Amendment rights if conducted "in an extraordinary manner, unusually harmful to an individual's privacy or . . . physical interests," Whren v. United States, 517 U.S. 806, 818 (1996), no such circumstances are present here. The undisputed facts show that Plaintiff was handcuffed for three to five minutes, and that Plaintiff was not in any pain or physical discomfort. (Wilson Aff. ¶ 4; Brown Dep. 30:7–12.)  In Atwater, the Supreme Court found the plaintiff's arrest for failure to wear a seatbelt to be constitutional where she was handcuffed, placed in a squad car, taken to the police station, booked, and waited an hour to appear before a magistrate. Atwater, 532 U.S. at 354–55. In light of this precedent, there is no

question that placing Plaintiff in handcuffs for three to five minutes while Defendant asked his supervisor whether to formally arrest Plaintiff did not violate Plaintiff's Fourth Amendment rights.

Because the undisputed facts show that Defendant acted reasonably in light of clearly established law concerning misdemeanor arrests based on probable cause, the Court finds that Defendant is entitled to qualified immunity as to Plaintiff's Fourth Amendment claim.  Defendant is therefore entitled to judgment as a matter of law on this claim.

### 2. First Amendment Retaliation

Alternatively, Plaintiff appears to claim that restraining him in handcuffs was unconstitutional retaliation for crumpling the citation that Defendant had issued to Plaintiff, which he characterizes as a "protest" to being given the citation.  (Dkt. # 52 ¶ 18; Brown Dep. 43:21.)  A First Amendment retaliation claim requires that a plaintiff show that (1) he was engaged in constitutionally protected activity, (2) the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant's adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct.  Keenan v. Tejeda, 290 F.3d 252, 258 (5th Cir. 2002).

Even assuming arguendo that Plaintiff's act of crumpling the citation was protected speech, and that a person of ordinary firmness would be chilled from engaging in such speech by waiting in handcuffs for three to five minutes while an officer consults with his supervisor, the Court finds that Defendant's conduct was not substantially directed toward suppressing Plaintiff's speech.  It is undisputed that Defendant's decision to place Plaintiff in handcuffs was based on Defendant's perception, after Plaintiff crumpled the ticket, that Plaintiff would be unlikely to appear in court as required by the citations.  (Brown Dep. 35:12–36:2; Wilson Aff. ¶ 4.)  While the parties disagree as to exactly what was said immediately before Defendant placed Plaintiff in handcuffs, the dispute is immaterial.[3]  There is no dispute that Defendant told Plaintiff that he believed Plaintiff's act of crumpling the ticket indicated that Plaintiff would not appear in court, and there is no evidence contradicting or otherwise discrediting Defendant's testimony as to his reason for handcuffing Plaintiff.  (Brown Dep. 35:12–21; Wilson Aff. ¶ 4.)

Defendant's motive is further supported by the Texas Transportation Code, which conditions release of a person arrested for an offense on the person's "promise to appear in court by signing the written notice prepared by the arresting officer."  Tex. Transp. Code § 543.005.  Additionally, a person arrested for a

---

[3] Whether Plaintiff threw the crumpled ticket onto the floor of his car or put it in his pocket is also immaterial; crumpling a ticket in the presence of the officer who just issued it is more than sufficient to justify Defendant's doubt as to whether Plaintiff intended to comply with the citations.

misdemeanor violation of the Transportation Code who refuses to make a written promise to appear in court must be immediately taken before a magistrate. Id. § 543.002(a)(2). While the record does not indicate whether Plaintiff signed the ticket before crumpling it up, Defendant's decision to handcuff Plaintiff, once it appeared to Defendant that Plaintiff did not in fact intend to appear in court, is consistent with the statutory obligation to immediately bring before a magistrate a person who refuses to promise to appear in court. Finally, Defendant's stated reason for handcuffing Plaintiff is supported by the fact that immediately after doing so, he contacted his supervisor to ask whether to formally arrest Plaintiff, and released Plaintiff after being so instructed. (Wilson Aff. ¶ 4.) The Court finds such conduct to be inconsistent with a purported desire, unsupported by any record evidence, to punish or otherwise retaliate against Plaintiff for his expressive conduct.

      The Court thus finds no dispute of material fact as to whether Defendant's decision to place Plaintiff in handcuffs was substantially motivated against Plaintiff's exercise of protected speech. The undisputed evidence shows that Defendant's reason for handcuffing Plaintiff was unrelated to Plaintiff's expressive conduct, and that Defendant's conduct was not objectively unreasonable in light of clearly established law prohibiting retaliation against protected speech. As a result, Defendant is entitled to qualified immunity on

Plaintiff's claim for First Amendment retaliation, and is therefore entitled to judgment as a matter of law on that claim.

II.     § 1983 Claim for Unconstitutional Application of Disorderly Conduct Statute

Defendant also objects to the Magistrate Judge's finding that he was not entitled to judgment as a matter of law on the question of whether Plaintiff's First Amendment rights had been violated by his citation for disorderly conduct. Having found that Defendant is not entitled to qualified immunity on Plaintiff's claim that the disorderly conduct citation violated his First Amendment rights, the Court must determine whether Defendant is nevertheless entitled to summary judgment on this claim. To prevail on a § 1983 claim, a plaintiff must prove two elements: (1) a deprivation of a federally protected right secured by the Constitution or laws of the United States, and (2) state action taken under color of law. Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 929 (1982); Leffall v. Dall. Indep. Sch. Dist., 28 F.3d 521, 525 (5th Cir. 1994).

Because there is no question that the citation issued by Defendant was state action taken under color of law, only the first element is at issue here. As discussed at length above, the First Amendment acts to limit the application of Texas's disorderly conduct statute, as it relates to expression, to fighting words— "those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent

18

reaction." Black, 538 U.S. at 359.  Again, the undisputed facts show that Plaintiff, while driving his car, gave the middle finger to Defendant through the closed window of his car as he drove by.  (Brown Dep. 7:6–14.)  Taken in the light most favorable to Plaintiff as the nonmoving party, the evidence is more than enough to create a dispute of material fact as to whether Plaintiff's gesture rose to the level of fighting words subject to punishment under section 41.02.  There is thus sufficient evidence to establish a dispute of material fact as to whether the citation for disorderly conduct on the basis of Plaintiff's gesture deprived Plaintiff of his right to freedom of expression under the First Amendment, and Defendant is not entitled to judgment as a matter of law on this claim.

## CONCLUSION

For the foregoing reasons, the Court **ADOPTS IN PART AND VACATES IN PART** the Magistrate Judge's Report and Recommendation (Dkt. # 59).  Specifically, the Court **GRANTS** summary judgment to Defendant as to Plaintiff's claim that Defendant unlawfully detained Plaintiff after Plaintiff crumpled the citation, and **DENIES** summary judgment to Defendant as to Plaintiff's claim that Defendant cited Plaintiff for disorderly conduct in violation of Plaintiff's First Amendment Rights.

**IT IS SO ORDERED.**

**DATED:** Austin, Texas, July 9, 2015.

_____

David Alan Ezra
Senior United States Distict Judge